## CLARK v. ELY and others.

Where a surety took a confession of judgment for his indemnity from the maker of two notes which he had undersigned, sold the maker's property on an execution thereon, and received the proceeds in the promissory notes of the purchasers of such property ; *Held,* that he was in equity a trustee of the last mentioned notes for the holder of the obligations upon which he was surety.

And that on his transferring such notes, in payment of a precedent debt of his own, or as security for such a debt, the tranferree could not retain them as against the prior equity of the principal creditor, on the faith of whose debt they had been realized. The latter has the prior and superior equity, and it must prevail over the legal title.

This was held in the case of a bank, which discounted the trust notes, and applied the proceeds on a subsisting indebtedness, but without relinquishing any security or property. And also in respect of a judgment and execution creditor, who received such notes in payment, without notice of the trust ; but who did not discharge his judgment or execution, or prove that he relinquished any lien or security in the transaction.

Where such a trustee was entitled to a part of the securities for his own benefit, on the beneficiary tracing a portion less than his own to the hands of third persons, the trustee having nothing left in his hands ; such third persons cannot assume that the portion in their possession was that belonging to the trustee. They stand in this respect in the same position towards the beneficiary, as the trustee himself.

The holder of negotiable bills or notes received as security or indemnity, or as payment for a previous liability or indebtedness, without relinquishing any valid security or lien; is not protected against the true owner either in law or equity ; although the same were taken in entire good faith.

The New York cases on this subject, commented upon.

October 11 ; 18, 1844.

THE case made by the pleadings and testimony was as follows.

On the 18th of May, 1839, S. Crowell being indebted to A. L. Jordan, gave to him two promissory notes for $300 each, payable in six and twelve months, signed by E. S. Townsend as his surety. Soon after the notes were delivered, Crowell confessed a judgment to Townsend for $3000 to secure his liability on this and other notes, amongst which was one of $500 to the Wayne

County Bank.   An execution was issued on this judgment and Crowell's goods were sold under it.   The sheriff received the purchaser's notes for the proceeds by Townsend's direction, and delivered them to the latter to the amount of $2640 34.   At this time Townsend was in embarrassed circumstances and owed a large debt to the Wayne County Bank.   D. G. Ely was also a judgment creditor of his, and had an execution in the sheriff's hands.

On the 6th of July, 1839, Townsend negotiated a part of the notes received by him from the sheriff on the execution against Crowell, amounting to $1062 62, to the bank, the bank discounted the same, and retained out of the avails their note against Crowell, and credited the residue to Townsend.   On the 26th of August, 1839, he transferred another portion of the notes, nearly $500, to Ely, as a payment on his judgment and execution.

Townsend paid nearly $600 of the notes on liabilities of Crowell, and the residue, like the parcel turned out to Ely, he used for his own benefit, leaving the notes to Mr. Jordan unpaid. The bank by its cashier had notice of the origin and consideration of the notes.   Ely received his portion without any information on that head.

On the 26th of December, 1839, Mr. Jordan transferred the two notes of Crowell and Townsend to Mr. Clark, who commenced this suit on the 7th of January, 1840.   The Wayne County Bank, in the mean time had become insolvent, and had passed into the hands of a receiver.   The bill was filed against Crowell, Townsend, Ely and the receiver, and claimed that the two latter should pay the complainant's notes against C. and T.

The answer of Ely set forth that his execution had been levied on sufficient property of Townsend to pay it, and that he received the notes in payment, and thereupon discharged his execution.   These facts, however, were not proved.

The answers of Ely and the bank insisted on their right to retain the notes and their proceeds, as having been received in good faith, without notice, and for value.

A few additional facts are noticed in the judgment of the court.

*A. L. Jordan*, for the complainant.

*D. Greig,* for Ely and the Receiver.

THE ASSISTANT VICE-CHANCELLOR.—The defendants objected to the reading of Townsend's testimony, unless the complainant waived a decree against him, and also because Townsend was primarily liable to the complainant's claim. As he permitted the bill to be taken as confessed, and thereby admits the demand, the objection is not well founded. (*Bradley* v. *Root,* 5 Paige's R. 632.)

When Townsend transferred the notes in controversy to the respective defendants, a portion of them equal to the amount of the complainant's notes against Crowell, belonged in equity to the payee of those notes, and to that extent Townsend was a trustee of the same for the payee of the notes.

As between himself and Townsend, the payee was not obliged to look to the latter's personal responsibility, but he had a right and interest in the notes themselves which a court of equity would protect and secure; and if necessary for his protection, this court would have restrained Townsend from transferring them, and placed them in the hands of a receiver to be applied to the payment of the notes.

The cases of *Bank of Auburn* v. *Throop,* 18 Johns. 505, *Haggerty* v. *Pittman,* 1 Paige's R. 298, and *Curtis* v. *Tyler,* 9 ibid. 432, are sufficient authorities for these positions.

The principal inquiry in the case therefore is, whether the defendants have obtained a title to the notes, which can be maintained against the prior equity of the complainant.

*First.* As to the Wayne County Bank. To the extent of the demand of the bank against Crowell for which Townsend was a surety, the right of the bank to take a part of the notes is undisputed. The residue of the notes which the bank received, was applied to the previous indebtedness of Townsend. No notes of Townsend's were paid by the operation, nor any securities relinquished. It does not appear in what form the demand against Townsend existed, but the net amount of the notes applied to it was passed to his credit on the books of the bank, from which I infer that the debt was for overdrafts or for money lent, and standing in an open account against him.

Thus, if the notes received had proved to be worthless, the bank would still retain its claim upon the original debt. It was said however, that the bank *discounted* the notes received. I do not perceive any peculiar force or virtue in that circumstance. It is precisely the same as if a merchant having a book account against Townsend, had received those notes to apply on it, and after calculating the discount for the time they had to run, and deducting the same from their nominal amount, had entered the net proceeds to the credit of Townsend in his account.

The bank having taken the notes for a precedent debt, without parting with any property or security, cannot retain them against the prior equity of the complainant.

I cannot act upon the suggestion that the defendants have obtained the portion of the securities which Townsend himself was entitled to keep, in respect of his own advances for Crowell. I must enforce the complainant's equity in the notes, precisely as it stood against Townsend, before the defendants received them ; and he then had a right to pursue the notes which constituted the trust fund. So in regard to the complainant's exhausting all the other assets which remained in Townsend's possession, before calling upon the defendants; or proving that he had no available remedy against Townsend personally. It does not appear that any portion of the trust fund remained in Townsend's possession or control, which was of any value, or that a resort to him would have been of any avail.

In the authorities referred to, it was shown expressly, that the creditor had another fund or resource equally available to him, and therefore equity required him to resort to it in the first instance.

*Second.* The defendant Ely claims that he is a *bona fide* holder for a valuable consideration and without notice, of the notes which he received from Townsend, and is therefore entitled to retain them as against the complainant.

In order to determine this claim, it is necessary to ascertain what facts are proved in respect to Ely's receipt of the notes. He had recovered a judgment against Townsend upon a prior indebtedness, and an execution had been issued thereon against the property of the latter. In this stage of the affair, Ely re-

ceived the notes from Townsend, in part payment and satisfaction of the judgment, and Ely directed his attorney to discharge the execution, and the judgment also. The answer states that the judgment and execution were discharged accordingly; but this is alleged upon the defendant's information, and not being proved, is to be laid out of the case.

So with the allegation in his answer, upon his information and belief, that his execution was levied upon the goods of Townsend more than sufficient in amount to satisfy it, and the goods were holden by the sheriff subject to the execution. This statement might be true, and yet by reason of prior executions on the same property, the levy may have been unavailing; but as it is not proved I need not criticise it.

The consideration upon which Ely became the holder of the notes constituting the trust fund, is therefore a precedent debt resting in judgment and execution. He received them in satisfaction, but he did not actually discharge either the judgment or execution.

This is not sufficient to enable Ely to retain the notes as against the complainant. Nor do the cases relied upon sustain his defence.

In *The Bank of Salina* v. *Babcock*, 21 Wend. 499, which is one of the strongest cases in his favor, the bank on receiving the misappropriated note, cancelled and discharged notes to nearly the same amount, on which they had responsible indorsers. They not only received the notes in payment, but parted with their security for the prior debt, on the faith of those notes. And in *Mohawk Bank* v. *Corey*, 1 Hill, 513, there was a similar consideration. *The Bank of Sandusky* v. *Scoville*, 24 Wend. 115, was decided upon our usury law of 1830, and is not directly in point. The learned judge who decided it, had only three years before, in *Smith* v. *Van Loan*, hereafter mentioned, distinctly sanctioned the decision made in *Rosa* v. *Brotherson*, 10 Wend. 85; and I cannot imagine that in his short opinion in the case of the Bank of Sandusky, he intended to assert a contrary doctrine.

It is not to be denied that one of the authorities cited by the defendant, upon this point, is in his favor.

I refer to the *Bank of St. Albans* v. *Gilliland*, 23 Wend. 311; but that case is not law in this state.

In *Coddington* v. *Bay*, 20 Johns. 637, the Court for the Correction of Errors decided that the receipt of negotiable notes as security or indemnity for a previous liability, did not entitle the holder to retain them against the true owner, although they were taken in perfect good faith. The arguments urged in that case in favor of the holder of the notes, were as cogent as any that can be presented when the paper is received in payment of a debt already due from the person transferring it. And the reasoning of the judges who pronounced the reported opinions are equally applicable to the taking of notes in payment.

Accordingly in *Rosa* v. *Brotherson*, 10 Wend. 85, the Supreme Court decided that where a creditor received a negotiable note before its maturity, in good faith *in payment* of a precedent debt, he could not enforce it against the maker who had a defence to it while in the hands of the payee. This decision was approved in *Smith* v. *Van Loan*, 16 Wend. 659, where the facts of the case are more fully stated than they are in the report in 10th Wendell.

In *Payne* v. *Cutler*, 13 Wend. 605, the notes were received *in payment*, and the court permitted the maker to prove a failure of consideration against the holder, who had taken them without notice, before their maturity.

In the *Ontario Bank* v. *Worthington*, 12 Wend. 593, 600, the bill was discounted and applied to take up a protested note, and the same principle was upheld by the court.

In 9 Wend. 170, *Wardell* v. *Howell*, the note was received as security, but the court affirm the principle as applicable to taking it in payment, where no security is parted with.

*Francia* v. *Joseph*, 3 Edw. Ch. R. 182, was similar in all respects.

And in all these cases, the various judges who decided them, regarded *Coddington* v. *Bay*, as establishing the principle, that receiving negotiable paper for a pre-existing debt, either as security or as payment, is not of itself, receiving it in the usual course of trade for a valuable consideration.

In *Smith* v. *Van Loan, before cited,* the question was one of set-off.

In the recent case of *Stalker* v. *McDonald,* in the Court for the Correction of Errors, December 26, 1843, and which is not yet reported,(*a*) the principles established in *Coddington* v. *Bay,* were again discussed and were re-affirmed by that court with a solitary dissenting voice.

The Chancellor in his opinion says, that the cases to which I have referred "fully establish the principle, that to protect the holder of a negotiable security which has been improperly transferred to him in fraud of the prior legal or equitable rights of others, it is not sufficient that it has been received by him merely as a security, or nominally in payment, of a pre-existing debt, where he has parted with nothing of value, nor relinquished any security upon the faith of the paper thus improperly transferred to him without any fault on his part." And the Chancellor adds that there have been many other decisions to the same effect, made in the different courts of law and equity, since *Coddington* v. *Bay,* which have not been reported.

It thus appears that from 1822 to the present day, the only decision in our courts which conflicts with the law as settled by our highest judicial tribunal, is that of the *Bank of St. Albans* v. *Gilliland ;* and that case can have no weight, when opposed to the whole current of authority, and especially to the principle established in the court of last resort.

Applying that principle to the facts before me, I cannot sustain Ely's defence. The payment of his judgment by the notes was nominal. For aught that appears, he might have enforced his pending execution, or issued another, on learning the complainant's equity. He parted with nothing of value, he relinquished no security on the faith of the notes in question.

His equity therefore is not equal to that of the complainant, and his legal title must yield to the prior and greater equity.

In my judgment the defendants Ely and the Wayne County

(*a*) It is now reported in 6 Hill, 93. And see *Ronan* v. *Adams,* 1 Smedes & Marsh. Ch. R. (Miss.) 45.

Bank, stand upon the same footing, and must restore to the complainant the amount of his notes. And as between themselves, they should contribute in proportion to the amounts which Townsend improperly transferred to them.

There must be a decree accordingly.