TEN EYCK & BRINCKERHOFF *v.* HOLMES and others.

WHERE a surety obtains from his principal a mortgage, to secure him against his liability, the creditor is entitled to the benefit of such security.

And if the surety include in such mortgage, a debt due to himself, as well as the indemnity against the principal's debt for which he is surety ; as between himself or his voluntary assignees, and the creditor, the latter is entitled to be first paid, out of the proceeds of the mortgage.

As a *quasi* trustee for the creditor, in respect of the indemnity thus obtained ; the surety is bound to pay over to him the first proceeds, in preference to paying them to any of his own general creditors.

Costs not given to either party, where the complainants succeeded in a part of their claims, and failed as to the residue.

Albany, January 15 ; March 16, 1846.

THE complainants held notes made by parties of the name of Wilber, on which the defendant Holmes, was an indorser and surety. They recovered a judgment against Holmes for the amount, January 16th, 1843, and on the 20th of February issued an execution. On the 30th of January, Holmes being liable for the complainant's debt, and having a demand of his own against the Wilber's to about $857, obtained from them a bond and mortgage to himself, on lands in Steuben county, for $1350, of which $500 was inserted to secure him for his indorsement of the above notes, and $850 for his own demand.

On the 18th of February, Holmes mortgaged his personal property, in part to the defendant Beaumont, and in part to the defendant Remsen, to secure debts due to, or liabilities incurred by them. On the 6th day of April, 1843, he executed to Beaumont and Remsen, an assignment of the Wilber's bond and mortgage, in trust for the benefit of creditors ; and on the 18th of April, he made to them a general assignment of all his property and effects. The complainants recovered a judgment against the Wilber's on the 21st of February, 1843. Their executions on both judgments, were returned wholly unsatisfied. They then filed the bill in this cause, it being a creditor's bill as against Holmes and the Wilber's ; and they set forth the foregoing transactions of Holmes, and claimed that they were entitled to priority

of payment out of the proceeds of Wilber's bond and mortgage, to the extent of the $500.

Beaumont and Remsen, by their answer, insisted that they were only liable to account to the complainants, for the surplus of the proceeds, after retaining the $850, secured for Holmes's own demand.

The bill also alleged that the assignment itself was fraudulent, but it is not necessary to state the circumstances. The cause was heard on the pleadings and proofs.

*C. Stevens*, for the complainants.

*D. Cady*, for Beaumont and others.

THE ASSISTANT VICE-CHANCELLOR.—This case must be determined on the equities subsisting between the complainants and Holmes, when the mortgage from the Wilber's was executed to the latter. His subsequent voluntary assignment for the benefit of creditors, does not affect the question. ,

Thus limited, the case is simple and plain. Holmes was standing in the situation of a surety for the payment of the Wilber's debt to the complainants, and he took from the Wilber's a mortgage in which the sum of $500, was inserted for the express purpose of securing to himself the payment of that debt. The complainants, as the principal creditors, were in equity entitled to the benefit of that security. This principle was settled a century and a half ago, and for a recent instance of its application, I refer to *Curtis* v. *Tyler and Allen*, (9 Paige, 432.)

I do not perceive how this equity can be impaired by the circumstance that Holmes was a creditor of the Wilber's, and the mortgage was executed for the purpose of securing that indebtedness, as well as to indemnify him against the liability to the complainants.

As the debtor of the complainants, it was the duty of Holmes to discharge the liability, out of any means which he could make available for the purpose. In addition to this obligation, he became as it were, a trustee for them in respect of the mortgage, so far as it provided for discharging their demand against Wilber's,

On receiving $500, or any less sum, on the mortgage, Holmes would have been bound equitably to pay over the same to the complainants, in preference to paying it to any of his other creditors, by reason of this *quasi* fiduciary relation. And by assigning the whole mortgage, he conferred on his assignees no other or greater control over its proceeds, than he could have exercised himself.

The mortgage was for the absolute payment of the money to Holmes, and not merely to indemnify him against his indorsement. And the terms of payment, placing the $500, first in order, leads to the inference that the parties actually had in view, the effect which the law attaches to the transaction, viz. the discharge of the complainants debt, out of the first moneys received on the mortgage.

Without reference however, to this indication of the actual intention, I think the complainants were entitled to the first receipts from the mortgage, to the extent of their debt and interest against the Wilber's, not exceeding however the $500, with interest, included in the mortgage in respect of that debt.

And as the assignees knew of the nature of this provision in the mortgage, they would have been subjected to costs, for resisting the bill, were it not for the complainants attack upon the assignment itself. The bill having failed in that portion of it, neither party is entitled to costs against the other.

Holmes having assigned the mortgage without providing for the complainants equity, and joined in resisting it, is not entitled to costs.