VERMONT MINING & QUARRYING COMPANY, PETER H. BROWN, GEORGE L. CLARK, AND ROYAL T. GLADDING, *v.* WINDHAM COUNTY BANK, SILAS M. WAITE, JOSEPH STEEN, AND TYLER L. JOHNSON.

[ IN CHANCERY. ]

*Bill in Chancery. Amendment. Corporation. Organization. Grant. Evidence. Practice. Notice. Defective Deed. Attachment and Levy.*

This suit was brought in the name only of the complainant corporation, but upon the hearing of the case the chancellor found that said corporation never had a legal existence, and on motion of the solicitor for the orators, granted leave to amend the bill of complaint by bringing into the same as orators, C., B., G., and H., and said bill was amended by making C., B. and G. complainants therein, they being the stockholders in said corporation, and the real parties in interest. *Held* that it was within the power of the court of chancery to allow such amendment in its discretion ; and in the view which the court took of the evidence as to the organization of said corporation, that discretion was properly exercised.

The act of incorporation in evidence creates certain persons by name, their associates and successors, a corporation by the name of the Vermont Mining & Quarrying Company, with power, &c. This is sufficient to enable the corporation to take a grant so as to vest in it the title.

A corporation may have such an existence by force of the act of the legislature creating it as to give it a capacity to take a grant, before it has such an organization and appointment of officers as to enable it to enter upon the transaction of its general business.

The complainant corporation organized, chose officers, a majority of directors, and a clerk, residing in this State, and paid taxes on the premises in question, but its records were lost, and all this had to be proved by parol. *Held* that the proof shows an existing organization.

Even if in consequence of the stock being substantially all owned by three persons, they did not practice having formal votes of directors acting as a board, and continue to re-elect their officers, but proceeded informally, they did not cease to be a corporation *de facto*, nor thereby lose their right to the premises.

62

Mining & Quarrying Company et als. v. Windham Co. Bank et als.

Three stockholders paid the money to K. for the premises, and had the same conveyed to the corporation, and took certificates of the stock of the corporation. *Held* that they are the equitable owners, either as equitable beneficiaries by way of a resulting trust, or as stockholders in the corporation.

Whether evidence filed before new parties are added by amendment can be read on the hearing after such amendment, depends upon the circumstances of the case and the issues involved. The issues being the same after the amendment as before, the evidence filed before the amendment, under the circumstances detailed in the opinion, should not be excluded.

The evidence having been read in the court of chancery without objection, it is too late to object to it in this court.

Notice to the attorney of the Windham County Bank, of the defective deed of the premises in question from K. to the complainant corporation, before such attorney caused said premises to be attached in a suit in favor of the bank against K., as his property, is notice to the bank. Notice to the cashier of the bank, while acting for the bank in procuring the attachment, is also notice to the bank.

Actual notice to the bank, of such defective deed, (although defective in having but one witness,) was notice of whatever right the grantee might have to a perfect deed from K. Such defective deed is evidence of an agreement to execute a valid deed, and a court of chancery would compel him to execute it.

The bank, by its attachment and levy, stands in no better condition in respect to title than K. did, and is under the same obligation to convey the title and interest acquired by its levy that rested on K. before the levy was made.

It is immaterial whether or not the bank had notice that complainants B., C. and G. were stockholders in the complainant corporation at the time of the attachment, or had any interest in the premises, either as stockholders or otherwise. It had notice of the deed on record from K. to said corporation, and that was sufficient.

The deed executed by K. to the complainant corporation was not a mortgage, and the bank has no more right to redeem than it would 'have had the deed from K. been perfect in its execution.

BILL IN CHANCERY.   The bill brought originally by said corporation only, charged that July 15, 1859, at Providence, R. I., George Kendall, of said Providence, and his wife Mary E., deeded t〉 said corporation the "Slate Quarry" in the towns of Vernon and Guilford, in Windham county, Vt., for the consideration of $5000, actually paid to said Kendall; that one person only signed his name as a witness, though the deed was in fact executed in the presence of two witnesses, the laws of Rhode Island requiring but one witness to a deed; that the deed was acknowledged at Providence before a Vermont commissioner, July 18, 1859, and recorded in Guilford town clerk's office, August 2d, 1859, and in Vernon, August 13, 1859; that said corporation immediately took and held possession of the premises until the happening of the events after stated; that August 23d, 1864, the Windham County Bank attached the same premises on a writ against said Kendall, returnable to September term, 1864, of Windham county court,—the *ad. damnum* was $10,000; that

Kendall not living in the State, and no personal notice given, the case was continued with an order of notice by publication to April term, 1865 ; that Kendall died previous to said April term, 1865, and that during that term the Windham County Bank procured Joseph Steen, a stockholder in said bank, to take administration on Kendall's estate, and consent to a judgment in the bank's favor against Kendall, which was accordingly rendered for $10,-362.00 damages and $20.25 costs ; that July 20, 1865, the bank, with Steen's consent, took out execution against Kendall's estate, and levied it on the premises in part satisfaction of the judgment. That Silas M. Waite and Tyler L. Johnson are now in possession, claiming to hold under the bank, and adversely to said corporation. The orators aver that the bank and its officers, &c., had full notice and knowledge, actual and constructive, of plaintiff's deed, and that it was executed in good faith, and a full consideration paid ; that the bank and its officers, &c., acted in bad faith from beginning to end, and with intent to defraud the plaintiffs.

The plaintiffs insist that in any event their deed is good in equity as against all persons having notice, actual or constructive, of its execution and contents. The plaintiffs aver that the bank had no valid claim against Kendall at the time of their attachment, nor at time of judgment ; that if the bank ever had any valid claim, it has been long since paid by other means than by the said levy.

*Prayer* : That the defendants may be required to surrender possession of the premises to the orators ; that the bank release all its title, &c. ; that Steen, administrator, be required to execute any release or conveyance which the court may deem necessary to perfect and quiet orators' title ; that an account may be taken, &c., and the defendants decreed to pay over the full value of the rents, issues and profits, &c., and for other relief, &c.

The answer of the Windham County Bank alleged that in 1852 the New England Mining and Quarrying Company was duly organized under a charter from this State.

Bought the premises in question, and commenced the business of quarrying slate, &c., under the superintendence of said Kendall, its financial agent and one of its principal officers.

That Kendall borrowed a large sum of money at different times of the bank, as such agent, and gave his notes therefor ; that the money was borrowed of the bank in the regular course of banking business, to be used for the purpose of carrying on said quarrying business ; that November 1, 1857, Kendall took up the above notes and gave the bank instead his note of $7968.23 ; that the bank postponed collecting the note on the assurances of Kendall that he would soon be able to pay out of the effects of the N. E. M. & Q. Company ; that the bank believed that Kendall was good and responsible.

Admits the bringing of the suit ; the attachment of the premises ; the entry and continuance of the case ; the death of Kendall ; the appointment of Steen as administrator, by the request of the bank ; that he was a stockholder ; the rendition of the judgment ; the execution and levy, as set forth in the bill ;˙ denies all frauds, &c. ; asserts that the judgment was founded on the note of November 1, 1857 ; that the same was due and wholly unpaid at the time of the attachment ; that the judgment is justly due now, except so far as satisfied by said levy ; says that Steen, administrator, before judgment, examined the claim of the bank, and became satisfied of its justice and correctness.

Denies all knowledge, notice or information about the plaintiff's deed, its execution, or consideration, except what appears by the records in the towns of Guilford and Vernon. Insists that the deed as so recorded is inoperative to convey the premises to the plaintiffs.

Admits that they took possession under the levy after the time of redemption run out, and hold and claim the premises as their property.

Says from information and belief that the New England M. & Q. Company was owing Kendall for the money which he had borrowed of the bank for them, for which the note of November 1, 1857, was given ; that he sued that Company, got judgment and execution in 1858; sold some personal property thereon, and levied on the premises for the remainder of his judgment, and had it set off to him at the appraisal of $5000 ; that after the time of redemption had run out, in 1860, he procured from the legislature

of this State a charter for another company by the name of the Vermont Mining and Quarrying Company; denies that such corporation was ever organized, and denies that the plaintiffs have a right to sue in their corporate name. The defendants' Waite, Johnson and Steen also filed several answers to the bill.

The answers were traversed, proofs taken, and a hearing had at September term, 1869, before BARRETT, chancellor. And thereupon the orators filed a motion for leave to amend said bill, by bringing into the same as orators, George L. Clarke, Peter H. Brown, Royal T. Gladding and David Heaton, 2d, all of the city of Providence, in the State of Rhode Island. Upon which motion the chancellor made the following order :

"This cause, in the name of Vermont Mining and Quarrying Company as orator, against the defendants, as per the original bill, having come on for hearing upon said bill, and the answers thereto, and replications and proofs, as the same were originally made and filed, was fully heard, and thereupon it was considered and announced by the court that the proofs failed to show that such corporation as is set forth in said original bill as orator therein ever had a legal existence, or any such existence as would entitle the court to maintain the suit and grant the relief prayed for in said original bill. Whereupon the solicitor, by whom said bill was brought, and who appeared in behalf of the rights, interests and equities sought and intended to be asserted and maintained by and under said bill, moved the court as per motion on file, for leave to amend said bill, by bringing into the same as orators the persons whom the evidence tended to show to have been and to be the owners of the capital stock of said supposed corporation, and whom the evidence tended to show to have paid to the said George Kendall, named in said bill, the purchase money for the real estate embraced and described in the deed executed by the said Kendall to the said Vermont Mining and Quarrying Company, for the establishment and rendering effectual of which deed for the conveyance of said real estate, as against the defendants, said original bill was brought.

Whereupon and against the objection of the defendants, that the court could not lawfully allow such amendment to be made, the court granted the leave asked by said motion."

And thereupon the plaintiffs amended their bill by inserting at the beginning as orators, " Peter H. Brown, George L. Clarke,

and Royal T. Gladding, of Providence, in the State of Rhode Island."

And subsequently in the charging part of said bill the words:

" And your orators the said Peter H. Brown, George L. Clarke, and Royal T. Gladding, further show that they are the owners of all the capital stock of the Vermont Mining and Quarrying Company, and that they jointly paid the said George Kendall, from their own means, the purchase money for the real estate embraced and described in the deed so executed and delivered by the said George Kendall and Mary E. Kendall to the Vermont Mining and Quarrying Company."

All the defendants jointly answered the amended bill, which answer was traversed.

It appeared by the evidence that Judge KEYES drew the deed from Kendall to the complainant corporation, but was not present when it was executed. It also appeared that Kendall told Wait, the cashier of the bank, that he had deeded the land in question to other parties, but did not state their names, and that both Wait and Keyes, the latter being the attorney of the bank, who brought the suit against Kendall, went to the town clerk's office in Guilford, and there saw the record of said defective deed, and noticed that it was witnessed by but one witness. All this took place before the attachment was made.

The records of the complainant corporation were lost, and its organization, &c., were proved by parol evidence.

At September term, 1870, BARRETT, chancellor, the bill was dismissed, *pro forma*, and the orators appealed.

*Charles N. Davenport*, for the orators.

The defendants' claim is that of an attaching or levying creditor to secure an antecedent debt. They stand upon their debtor's title. Their levy gives them only such title as their debtor had. If burdened with a trust in favor of orators, they take subject to the burden. *Poor* v. *Woodburn*, 25 Vt., 234. No principle is better settled than that trust property is not subject to attachment or execution upon the private debts of the trustee. *Porter* v. *Bank of Rutland*, 19 Vt., 425; *Williams* v. *Fullerton*, 20 Vt., 346; *Barber* v. *Chapin*, 28 Vt., 413. We learn from the statute

what real estate can be taken in execution: "*All houses, lands, and tenements belonging to any person in his own right in fee*," *&c.* Gen. Stats., 364, § 15. By the very terms of the statute, trust property is excluded. It does not belong to the debtor, "*in his own right in fee.*" *Hackett* v. *Callendar*, 32 Vt., 97 ; *Hart et al.* v. *Bank et al.*, 33 Vt., 252 ; *Elmore* v. *Marks et al.*, 39 Vt., 538.

Notice to either Waite, Burrows or Keyes, disclosed by the testimony, would be sufficient. *Porter et al.* v. *Bank et al.*, 19 Vt., 425. "It may be laid down as a general rule, that a purchaser with notice of a right in another, is, in equity, liable to the same extent and in the same manner as the person from whom he made the purchase." 2 Am. L. Cas. in Eq., 135 ; Sugden on Ven. and Pur., 733 ; *Miller et al.* v. *R. &. W. R. R.*, 36 Vt., 452.

In the leading case of *LeNeve* v. *LeNeve*, 1 Vesey, 64, (S. C., 3 Atk., 646,) Lord HARDWICK says : "The person who purchases an estate, although for a valuable consideration, after notice of a prior equitable right, makes himself a *mala fide* purchaser, and will not be enabled by getting in the legal estate to defeat such prior equitable interest, but will be held a trustee for the person whose right he sought to defeat."

Whatever is sufficient to put a person upon inquiry is good notice, that is, where a man has sufficient information to lead him to a fact, he shall be deemed conusant of that fact. 2 Am. L. Cas. Eq., 138-9. *If a deed be defective in a statutory requisite, as wanting one witness, it would be regarded as a sufficient contract to convey, which in this State a court of equity would enforce,* and in other States would be executed under the statute of Henry VIII." *Sherman, Adm'r.*, v. *Dodge*, 28 Vt., 31 ; *French* v. *French*, 3 N. H., 234 ; *Hart et al.* v. *Bank et al.*, 33 Vt., 252. The proofs show that there is such a corporation, *de facto*, as the Vermont Mining and Quarrying Company. We show a charter, an organization under the charter, officers chosen, by-laws enacted, a common seal, a book of records, certificates of stock issued, the real estate in controversy purchased and paid for, and an attempted conveyance of it to the corporation. This state of facts is sufficient to give the corporation a legal status in court, as

against the defendants. *Lord* v. *Bigelow*, 8 Vt., 445 ; *Prop. Soc.* v. *Clark*, 4 Peters, 501. An organization *de facto* is sufficient to entitle a corporation to sue and be sued. Abbott's Law of Corp., 566, § 29.

The payment of the consideration by Brown, Clarke and Gladding creates a resulting trust in their favor. Hill on Trustees, 92, and cases cited ; *Barron* v. *Barron et al.*, 24 Vt., 375 ; *Hart et al.* v. *Bank et al.*, 33 Vt., 252.

It was competent for the chancellor to allow orator's solicitor to amend the bill, by bringing in the names of Brown, Clarke and Gladding, as orators. 1 Daniels Chan. Prac., 454, et seq.; *Noyes* v. *Sawyer*, 3 Vt., 160 ; *Cannon* v. *Slason*, 14 Vt., 183 ; *Smith* v. *Wainwright*, 24 Vt., 111.

*H. E. Stoughton,* for the defendants.

An amendment cannot be permitted which changes the parties. *Emerson* v. *Wilson*, 11 Vt., 357. This rule we understand applies to cases in equity. *Milligin* v. *Mitchell*, 1 My. & Cr., 433 ; Story's Eq. Pl., § 887 ; Mitford's Pl., 66–7, 385–7–8–9, o. n. 1. 4 J. C. R., 363.

This amendment makes an entirely new record, and the depositions taken in a cause no longer existing, cannot be read. Mitford, p. 389, n. 1 ; 13 E. C. L., 496 ; 3 Atk., 370 ; 2 E. Ex. R., 124.

This was a private corporation. Com. Sts., p. 83, § 1 ; Gen. Sts., p. 543, § 2. They were bound to have a clerk who should have the custody of by-laws and records. Gen. Stats., p. 544, § 7. Such clerk to make and keep a record, § 9. The term " clerk " is defined in § 13. It was incumbent upon the corporation to prove its corporate existence. Ang. & A. on Cor., § 635. And this should be done by the records. Ib., § 635 ; 9 Cow., 205.

Deeds, to be entitled to registration, must be signed and sealed by the party in the presence of two or more witnesses, and acknowledged. Gen. Stats., p. 448, §§ 4, 7 ; p. 450, § 18. Exception where deed is not acknowledged, p. 449, § 11. This deed was defective, and hence no notice of title to any one. *Hoisington* v. *Hoisington*, 2 Aiken, 235 ; *Isham, adm'r.*, v. *Ben-*

*nington Iron Company*, 19 Vt., 230 ; *Slocum* v. *Catlin et al.*, 22 Vt., 137. The attempt, therefore, to have the deed witnessed after its record, and after the commencement of this suit, and after the death of Kendall, is futile.

The opinion of the court was delivered by

PECK, J. It is objected on the part of the defense that the court of chancery improperly allowed the amendment. As the three orators let in by the amendment own the whole stock of the Vermont Mining and Quarrying company, and as they paid the whole consideration to Kendall for the premises in question, which he conveyed to the corporation, and took the whole stock of the corporation, the order permitting the amendment is but allowing these stockholders to prosecute the same right in their own names, which they commenced to prosecute in the name of the supposed corporation, the court of chancery having failed to find such an organization as to enable the suit to be maintained in the corporate name. It is not a prosecution of a new and distinct right, but the same right under a different name, and in the name of the persons who have all the equitable or beneficial interest, whether the corporation has a technical existence or not. It was within the power of the court of chancery to allow the amendment, in its discretion ; and in the view that court took of the evidence as to the organization of the complainant corporation, that discretion was properly exercised.

It is insisted here, as in the court of chancery, on the part of the defense, that the proof does not show an organization of the Vermont Mining and Quarrying Company. The act of incorporation in evidence creates certain persons by name, their associates and successors, a corporation by the name of the Vermont Mining and Quarrying company, with power, &c. This is sufficient to enable the corporation to take a grant so as to vest in it the title. A corporation may have such an existence by the force of the act of the legislature creating it, as to give it a capacity to take a grant, before it has such an organization and appointment of officers as to enable it to enter upon the transaction of its general business. But we think, in addition to such capacity by the char-

ter as enabled it to take the title to the premises by the convey-
ance from Kendall, the proof shows an organization of the corpo-
ration, an existing organization that it has not lost.   It organized,
chose officers, a majority of directors living in this State, a clerk
residing in this State, &c., &c., and paid taxes on the premises in
question.   Even if in consequence of the stock being substantially
all owned by three persons, they did not practice having formal
votes of directors acting as a board, and continue to re-elect their
officers, but proceeded informally, they did not cease to be a cor-
poration *de facto*, nor thereby lose their right to the premises,
upon the facts proved in the case.   But whether the equitable in-
terest is in the corporation, or in the three individual orators who
own all the stock, is immaterial as to the merits of the case as
between the orators and the defendants.   These three stockholders
paid the $7,200 to Kendall for the premises, and for it took a con-
veyance of the premises to the corporation, and took certificates
of the stock of the corporation.   They are the equitable owners,
either as equitable beneficiaries by way of a resulting trust, or as
stockholders in the corporation.

It is also insisted by the defendants' counsel, that the amend-
ment so changes the record that the evidence taken and filed be-
fore the amendment cannot be read on the hearing.   Whether
evidence filed before new parties are added by amendment, can be
read on hearing after such amendment, depends on the circum-
stances of the case and the issues involved.   In this case the
issues were substantially the same after the amendment as before,
and no new defendants were introduced by the amendment to be
affected by testimony taken when they had no opportunity to be
present and participate in the examination of the witnesses.   All
the defendants had this opportunity, and no reason appears to jus-
tify excluding the evidence.   It does not appear that any objection
was made to the testimony in the court of chancery, but on the
contrary it is conceded that it was there read without objection,
and it is too late to object to it in this court.

It is clearly shown that the bank had notice of the deed from
Kendall to the plaintiff corporation, before the attachment of the
premises by the bank.   Notice to Keyes, who made the deed, and

who saw the record of it in the town clerk's office, and as at-
torney for the bank there examined it, with a view to bringing a
suit for the bank and attaching the land, and levying upon it as
the property of Kendall, is sufficient notice to the bank. So is
the notice to Waite, proved in the case, he being cashier of the
bank, and acting for the bank in procuring the attachment to be
made, and receiving the notice while acting in that business. It
also appears from the deposition of Burrows, that he was a direc-
tor of the defendant bank at the time the bank attached the prem-
ises and made the levy, and that before the attachment by the
bank, and while he was director, he had notice of the conveyance
by Kendall, and that Kendall had received the price of the land.
Actual notice to the bank of such defective deed, (although de-
fective in having but one witness,) was notice of whatever right
the grantee might have to a perfect deed from Kendall. Such de-
fective deed is evidence of an agreement to execute a valid deed;
and the proof shows that Kendall was under obligation to the
grantee to perfect that deed, and a court of chancery would com-
pel him to do so. Hence the bank, by its attachment and levy,
stands in no better condition in respect to title than Kendall did,
and is under the same obligation to convey the title and interest
acquired by its levy, that rested on Kendall before that levy was
made. It is urged that the bank had no notice at the time of its
attachment or levy, that Brown, Clark and Gladding, or either of
them, owned any stock in the plaintiff corporation, or that they
had any interest in the premises, either as stockholders or other-
wise. But it is immaterial whether the bank had any such notice
or not. It had notice of the deed on record from Kendall to the
Vermont Mining and Quarrying Company, and that is sufficient.
It is immaterial whether they knew who the stockholders were or
not.

It is claimed by the counsel on the part of the orators, that as
the bank is a levying creditor in virtue of an antecedent debt, and
not a purchaser advancing the consideration at the time of the
purchase, upon the faith of a good title, the bank would have ac-
quired no title as against the orators, even had the attachment
and levy been made without notice to the bank, of the deed to the

orators.   As we find notice to the bank proved, we have no occasion to express an opinion on this point.

It is claimed by the defendants' counsel, that if the orators have an equity paramount to that of the bank, the bank have a right to redeem.   We see no ground on which any such right can rest. The deed executed by Kendall to the orator corporation was not a mortgage ; it was not executed to secure a debt ; it was an absolute sale.   Kendall therefore had no right to redeem, and we have already seen that the bank acquired by its levy no greater rights than Kendall had after he executed the deed to the Vermont Mining and Quarrying company.   The bank has no more right to redeem than it would have, had the deed from Kendall been perfect in its execution.

The decree of the court of chancery is reversed, and case remanded to that court with mandate to decree for orators according to the prayer of the bill, with costs.