MABEL M. MORRILL *v.* JOHN F. MORRILL, MOSES BLAKE
EASTERN TOWNSHIPS BANK, JOSEPH
BATES' ESTATE.

[ IN CHANCERY. ]

*Mortgage defectively executed. A Ward may Foreclose a Mortgage given a Surety on Guardianship Bond. Trust. Surety. Equitable Mortgage. Attaching Creditor. Amendment of Answer. Witness to a Deed.*

The oratrix was the ward of the defendant Morrill; and he executed the mortgage in question to defendant Bates, to secure him for having signed his guardianship bond. The mortgage was defectively executed, having been witnessed by the wife of the mortgagee. It was recorded; and the defendant bank had notice, in fact, of such mortgage, before the levy of its execution. In a petition to fore close the mortgage, *Held,*

Morrill v. Morrill.

1. That the oratrix, being the beneficiary under the bond, is entitled to have the mortgage stand as a security to her for what is due from her guardian ; and, to a decree of foreclosure.

2. When an assignment of securities is made by the principal to the surety for indemnity merely, an implied trust is raised in favor of the creditor, which he may enforce, on the maturity of his debt, whether the surety has been damnified or not, and whether the surety or principal, either or both, are insolvent.

3. The record of a mortgage deed thus defectively executed, is not constructive notice to subsequent purchasers, or attaching creditors; but it is a good equitable mortgage.

4. The intention was to secure the surety on the bond; equity will effectuate it, and treat the deed as the parties intended it.

5. Although the mortgage purports to have been given for a note, it may be shown to have been given for indemnity only.

6. The bank having notice, in fact, of the mortgage, before the levy of its execution, takes only the title and interest of the debtor; and is affected with notice of all equities that the mortgagee had under the deed.

7. And this is so, although the equity of an innocent purchaser, who had paid his money for the land, would prevail over the equity of the mortgagee.

8. The test of competency of witnesses, attesting the execution of deeds, is their ability to testify to prove the execution; and if they cannot so testify they are incompetent; and the competency must exist at the time of signing.

9. The true and only mode, sanctioned by the books, of amending an answer, is to incorporate the amendment into a supplemental answer, verified by oath. The practice of interlining and substituting other words in the original answer is unauthorized, and censured.

THIS cause was heard at the February Term, 1880, Orleans County, REDFIELD, Chancellor, on bill, answer, traverse, amended bill, traverse, and testimony. The chancellor stated, and decreed as follows :

The oratrix seeks alternative relief, upon grounds entirely distinct. I think the oratrix might in equity have the benefit of the Bates mortgage, if it was properly executed ; but it seems to me defectively executed ; not entitled to registry ; and not *constructive* notice to attaching creditors. In the somewhat peculiar condition of the case, if the oratrix has relief it would probably require the services of a master, and thus enhance the expense. In the interest of economy and progress, the bill is dismissed with costs, *pro forma.*

The petition set out that the defendant Morrill was appointed guardian of the oratrix, who was then a minor, in 1863 ; that said Bates signed his guardianship bond ; that she became of full age in 1875 ; that said Morrill rendered his account in 1877, and there was due the oratrix $3367.24, which the Probate Court ordered to be paid to oratrix ; that he had paid no part of it ; that

he was insolvent; that on the 19th day of February, 1875, said Morrill executed a mortgage deed of certain lands to said Bates, conditioned for the payment of one note, dated February 19, 1875, and given for $6500, payable on demand; that said mortgage deed in reality was given to said Bates to secure him for all costs, damages and expenses, by reason of signing said guardianship bond; that it was given for no other reason; that said Bates deceased in 1876; that Caroline C. Bates was appointed his executrix; that the estate of said Bates was insolvent; that after said mortgage was so given, said Blake attached said land, on a claim against said Morrill and others; that said bank also attached said land so mortgaged, after the mortgage was given. The oratrix prayed that she might be substituted to all the rights of said Joseph Bates, deceased, and said estate, under and by virtue of said mortgage; and that said bank and said Blake pay to her what was due from said Morrill, or be foreclosed of, and from, all equity of redemption, or claim in, and to the said mortgaged premises.

The defendant bank answered, claiming that the said mortgage was given merely to defraud creditors. After the evidence had been partly taken by the oratrix, the defendant bank discovered that one of the two witnesses to said deed was the wife of said Bates; and thereupon petitioned the chancellor for leave to amend its answer, so as to show that fact, which was granted.

*L. H. Thompson*, for the oratrix.

Mrs. Bates was a competent witness to the deed. *Smith* v. *Chamberlin*, 2 N. H. 440. The grantor, Morrill, is estopped from denying competency, and the creditor stands on the rights of the debtor. 1 Phil. Ev. 476 of text, & n. 2; 5 Durnford & E. 371. In any event, the instrument is an equitable mortgage. The bank is not a *bona fide* purchaser, but an attaching creditor, and as such is affected by all the equities which would prevail against its debtor. The attachment was made upon a former debt. The bank must yield to the prior and superior equity of the Bates lien. 1 Jones Mort. (2 ed.) ss. 461, 462, 485, 572, 556; 32 Vt. 108; *Hart* v. *Bank*, 33 Vt. 252; *Abel* v. *Howe*, 43 Vt. 408; Perry

Trusts, s. 556 ; 46 Vt. 674. The oratrix is entitled to be subrogated to Bates' equity and security under the Bates mortgage. 1 Story Eq. Jur. (7 ed.) 502 ; 1 Jones Mort. ss. 384, 387 ; *Paris* v. *Hulet*, 26 Vt. 311 ; 8 Metcalf, 20 ; 1 Lead Cas. in Eq. 163 (3d Am. Ed.)

*John Young* and *Crane & Alford*, for defendant.

The wife of the mortgagee is not a witness to said mortgage. Gen. Sts. 327, s. 27 ; *Sullivan* v. *Sullivan*, 106 Mass. 474 ; Starkie Ev. 142 ; *Sparhawk* v. *Buell*, 9 Vt. 41, 79 ; Bacon's Abridg. 475 ; 8 Conn. 549 ; 23 Ib. 1 ; 14 Ib. 134 ; 4 Term R. 370 ; 2 Ib. 133. The witness must be competent at the time of signing. 2 Met. 522 ; 2 Strange, 1253 ; 5 B. & Ald. 589 ; 26 Conn. 199 ; 1 Day, 35. The recording of such mortgage is not constructive notice. *Day* v. *Adams*, 42 Vt. 510 ; 19 Ib. 245 ; 10 Rich Eq. 149 ; 13 N. H. 38, 43 ; 32 Vt. 97.. A contract under seal will not be reformed except by " the most irrefragable evidence." *Griswold* v. *Smith*, 10 Vt. 452 ; 11 Vt. 138 ; 15 Ib. 448 ; 17 Ib. 183 ; 45 Ib. 87. Courts of equity will not reform a contract for the simple reason that the legal effect is different than the parties anticipated. *Proctor* v. *Thrall*, 22 Vt. 262 ; 23 Ib. 597 ; 9 Conn. 96 ; Adams Eq. Side, 169 n.

A party, seeking relief under an agreement under seal, and proposing to introduce new conditions, or to vary those which appear upon the face of such agreement, will not be permitted to do so by parol testimony. 17 Mass. 203 ; 1 Ves. Jr., 402, n. 1 ; 4 Brown's Ch. Cas. 514 ; 7 Ves. 211 ; 15 Ib. 516 ; 5 Ib. 722 ; 14 Ib. 519 ; 102 Mass. 24 ; 19 Conn. 63 ; 10 Harris, 237. *Blodgett et al.* v. *Hobart*, 18 Vt. 414 ; 1 Jones Mort. s. 407. (2d ed.) A contract will not be reformed, or enforced, except in behalf of the parties thereto, or their privies. *Petesh* v. *Hornbach*, Sup. Ct. Wis. Am. L. Rev. May, No., 1880, p. 398. Where the equities are equal the legal estate prevails. *Hart* v. *Bank*, 33 Vt. 265 ; 17 Conn. 97 ; 8 Conn. 558 ; 15 Ib. 504 ; 1 Jones Mort. s. 40. On the theory of the oratrix, as to giving the mortgage, there was no consideration. 9 Vt. 233 ; 8 Ib. 501 ; 35 Ib. 649 ; 17 Pick. 407, 21 Ib. 241 ; 13 Conn. 165, 376.

The opinion of the court was delivered by

POWERS, J. The ability to testify is the test of competency required of witnesses, called to attest the execution of deeds and other written instruments. If the person called would be an incompetent witness to prove the fact of execution, such person is not a proper attesting witness. And competency to testify must exist at the *time of attestation*. This has been the well settled rule ever since the decision of *Holdfast* v. *Dowsing*, 2 Strange, 1253. That was the case of a will executed in the presence of a witness, incompetent to testify by reason of interest. Ch. J. LEE, in delivering the resolution of the court, said, " The true time for his competency is the time of attestation, otherwise a subsequent infamy, which the testator knows nothing of, would avoid his will." This rule has since been generally adhered to. 1 Greenl. Ev. (12th ed.) s. 572 ; 2 Washb. Real Prop. As confirmatory of the rule, it is well settled that if a witness, competent at the time of attestation, becomes incompetent afterwards, the instrument is nevertheless well executed. *Jones* v. *Mason*, 2 Strange, 833 ; *Bernett* v. *Taylor*, 9 Ves. 381.

Our statute, s. 10, c. 49, Gen. Sts., declares that wills shall be probated, if the attesting witnesses were competent at the time of execution, although they afterwards become disqualified. The mortgage deed, therefore, executed February 19, 1875, by John F. Morrill to Joseph Bates, witnessed by Mrs. Bates, the wife of the mortgagee therein, was defectively executed, and its record was not constructive notice to subsequent purchasers or attaching creditors. *Day* v. *Adams*, 42 Vt. 510.

The evidence shows that both parties called Mrs. Bates to witness the deed, and some members of the court think this sufficient to estop the parties from questioning its due execution. See *Honeywood* v. *Peacock*, 3 Camp. 196. We do not, however, undertake to decide this question. But this mortgage deed, although defectively executed, is a good equitable mortgage. It is proven beyond question, that Bates sought its execution, as security against his liability on Morrill's guardianship bond, and that Morrill voluntarily executed it, solely to furnish such security. This intent being found, equity will effectuate it, and treat the deed as the

parties intended. A mere agreement to give a mortgage is treated in equity as a mortgage, and no want of form will defeat the instrument as an equitable mortgage. Jones on Mort., ss. 163, 167 ; Jones on R. R. ss. 73, 122 ; *Miller* v. *R. & W. R. R. Co.*, 36 Vt. 452. The true character of this mortgage may be shown, notwithstanding it purports to be given as security for a promissory note. It may be shown that it was given for indemnity only. Jones on Mort. s. 384.

The evidence shows that the manager of the Eastern Townships Bank examined the records in Derby to ascertain whether Morrill's real estate was encumbered, and found this Bates mortgage. He then learned the fact that a mortgage in favor of Bates for *some purpose* had been given by Morrill. We incline to think that this search of the records was before the bank put its attachment upon the land, though, whether before or after, makes little difference in the case. The bank, having notice in fact of the deed, is affected with notice of all equities that Bates had under the deed. If the bank, in point of fact, had no notice of the deed until after it made its attachment, still, notice received at any time before levy of its execution, is sufficient to subordinate its rights to the superior equities of Bates. *Hackett* v. *Callender*, 32 Vt. 97 ; *Hart* v. *F. & Mechanics' Bank*, 33 Vt. 252.

The effect of this notice to the bank is to limit its claim to the actual interest and title of its debtor. The bank is attempting to get security for an old debt ; it has advanced no new consideration ; it did not even make the attachment, upon the theory that the Bates deed was defective and conveyed no title ; for it then had no notice that the deed was defective. The equity of an innocent purchaser, who had paid his money for the land, would prevail over the equity of Bates. The purchaser from Morrill might get more as against Bates than his grantor had. The creditor of Morrill takes only the title of his debtor. *Hackett* v. *Callender, supra ; Hart* v. *Bank, supra ; Mining Co.* v. *Bank*, 44 Vt. 489.

This mortgage being valid as between Morrill and Bates, can this oratrix, being the beneficiary under the bond, executed by Morrill and Bates, make it available as a security to her for

the amount due from her guardian? The mortgage was executed to Bates as an indemnity only. In some states a distinction seems to have been drawn between cases, where the security is given for indemnity only, and where it is given both for indemnity to the surety, and to secure the debt. Where it is given as security for the debt as well as indemnity, there would seem to be little doubt that the creditor, whether cognizant of the assignment and its purpose or not at the time of the assignment, could, when it came to his knowledge, avail himself of it as effectually, on maturity of his debt, as he could, had it been assigned to him directly.

But when the assignment is for indemnity only, some courts have held that the surety's rights to apply the security as he pleased is inconsistent with the idea of a trust in favor of the creditor ; and that the creditor can only reach the security by way of subrogation after the surety has been damnified, actually or constructively. *Rankin* v. *Wilsey*, 17 Iowa, 463 ; *Carpenter* v. *Bowen*, 42 Miss. 28 ; *Hopewell* v. *Bank*, 10 Leigh, 206.

The great weight of authority, however, is against the propositions, that the creditor's right is rooted in the doctrine of subrogation. The assignment of security by the principal to his surety is an appropriation of funds for the ultimate discharge of the debt, for which he is holden. The surety has the right to apply the security directly to the payment of the debt. If the surety pays with his own funds, *he keeps his principal's debt on foot* against him, and then applies the security to its payment. Thus in any event the funds of the principal are made to satisfy the principal's debt, and this accords with the purpose of the principal, when he gave the security. If the surety, after the assignment of the security, becomes insolvent, or by any act of the creditor, is discharged from liability, he holds the security in trust for the creditor. *Cullom* v. *Br. Bank*, 23 Ala. 797 ; *Clark* v. *Ely*, 2 Sand. Ch. 166.

The clear deduction from the cases is, that, an assignment of securities by the principal to his surety for indemnity merely, raises an implied trust in favor of the creditor, which, on maturity of his debt, he may enforce, whether the surety has been damnified

or not, and irrespective of the question whether the surety or principal, either or both, are insolvent. *New Bedford Inst. for Savings* v. *Bank*, 9 Allen, 175 ; *Kramer's Appeal*, 37 Penn. St. 71 ; *Rice's Appeal*, 79 Penn. St. 168 ; *Seibert* v. *True*, 8 Kan. 52 ; *Ohio Life Ins. Co.* v. *Ledyard*, 8 Ala. 866 ; *Moore* v. *Moberly*, 7 B. Mon. 299 ; *Curtis* v. *Tyler & Allen*, 9 Paige, Ch. 432 ; *Ten Eyck* v. *Holmes*, 3 Sand. Ch. 428 ; *Parris* v. *Hulett*, 26 Vt. 308 ; 1 Story Eq. Juris. s. 499 (Redfield's ed.) ; Brandt Suretyship, s. 283.

Here the principal and surety are both insolvent, and the liability of the surety has been fixed by judgment ; but we regard these facts important, only as they seem to intensify the equity of the oratrix.

A question of practice is brought to our notice by this and some other recent cases, which calls for comment. The defendant bank, in its first answer filed in the cause, conceded the execution of the Bates mortgage, and interposed no defence against it, except that it was fraudulent against creditors. After the testimony had been partly taken, the defendant discovered the defect in the execution of this mortgage, and, thereupon, applied to the court for leave to amend its answer, by substituting certain words for words then in the answer ; by interlining other words ; and by incorporating certain new matter. The amendment in this mode was authorized. This method of amending an answer is wholly unauthorized, even by the rules of *loose* practice. The answer is sworn evidence in the cause, and can be changed in its phraseology no more than a deposition could. Indeed, viewed in its character as evidence, it *is* a deposition. The true mode, and the only one, sanctioned by the books in cases of this kind, is to incorporate any amendment which the court sanctions into a supplemental answer, to be verified by oath. The amendment in this case is not sworn to ; the original answer is mutilated so that no conviction for perjury could be had if false swearing existed in that, as originally drawn. Moreover, the amendment itself went quite as far as the authorities would warrant. Mitf. & Tyl.'s Pleadings, c. 4 ; 1 Dan. Ch. Pr. 781 *et seq.;* Adams' Eq. (6 ed.) 680 *et seq.*

6

The result is, that the oratrix is entitled to have the Bates mortgage stand as a security to her, for the payment of the sum due her from the defendant Morrill, as her guardian, as fixed by the Probate Court; and a decree of foreclosure thereof against the defendants; and so far as she receives payment from, or under such decree, the estate of Bates is to be discharged from liability under said bond. The *pro forma* decree of the Court of Chancery is reversed, and the cause is remanded with directions to enter a decree for the oratrix in accordance with the views herein expressed.

## [In Chancery.]

