**In re Thomas Edward RYAN, Debtor.**

**Peter M. STERN, Plaintiff, Appellee,**

v.

**CONTINENTAL ASSURANCE COMPANY, Defendant, Appellant.**

**No. 88–1093.**

United States Court of Appeals, First Circuit.

Heard June 9, 1988.

Decided July 11, 1988.

---

Bradford R. Martin, Jr., with whom Ryan & White, P.C., Springfield, Mass., was on brief, for defendant, appellant.

Peter M. Stern, Springfield, Mass., for plaintiff, appellee.

Before CAMPBELL, Chief Judge, TORRUELLA and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

We are asked to decide, under federal bankruptcy law and Vermont property law, which of two claimants has priority to certain property owned by the debtor: a federal bankruptcy trustee, or the holder of a recorded, but defective, mortgage deed.

## I.

The facts are undisputed. On November 11, 1975, debtor Ryan, a resident of Massachusetts, purchased a condominium in Hartford, Vermont. The property was subject to a $39,000 mortgage held by the Quechee Lakes Corporation. As required by Vermont law, Vt.Stat.Ann.tit. 27, § 341 (1975),[1] the mortgage deed was recorded in the Hartford town clerk's office. However, contrary to the requirement of section 341, the mortgage deed was signed by only one, rather than two, witnesses. On November 17, 1975, the Quechee Lakes Corporation assigned the mortgage to the appellant, Continental Assurance Co. ("CAC"). This assignment, signed by two witnesses as required by section 341, was properly recorded.

In 1982, Ryan entered into personal bankruptcy, and his estate, including the condominium, was transferred to bankruptcy trustee Stern, the appellee. Trustee Stern undertook to sell the condominium and, as part of the sale procedure, commissioned a title search. The search revealed appellant CAC's mortgage on the condominium. Stern, however, believed that under Vermont law the mortgage was not effectual because the mortgage deed from Ryan to Quechee Lakes Corporation had not been signed by two witnesses as required by section 341. Stern and CAC stipulated that the property would be sold and that the outstanding amount of the mortgage would be paid over to CAC, but that Stern would bring an adversary proceeding in the bankruptcy court seeking to set aside the mortgage. CAC agreed that, if Stern prevailed in the adversary proceeding, it would turn over to the trustee the funds it had received from the sale proceeds.

---

1. The statute provides:
   Deeds and other conveyances of lands, or an estate or interest therein, shall be signed by two or more witnesses and acknowledged by the grantor before a town clerk, notary public, master, county clerk or judge or register of probate and recorded at length in the clerk's office of the town in which such lands lie. Such acknowledgment before a notary public shall be valid without his official seal being affixed to his signature.
   Vt.Stat.Ann.tit. 27, § 341 (1975). In the words of the statute, a mortgage is a "conveyance of lands, or an estate or interest therein."

The bankruptcy court dismissed the trustee's complaint. In a comprehensive and thoughtful opinion, the bankruptcy court held that the trustee took the property subject to CAC's mortgage. *In re Ryan,* 70 B.R. 509 (Bankr.D.Mass.1987). The court concluded that the trustee had both "constructive notice" and "inquiry notice" of CAC's mortgage, and that this sufficed, notwithstanding the absence on the document of two witnesses' signatures. The United States District Court for the District of Massachusetts reversed the bankruptcy court. *In re Ryan,* 80 B.R. 264 (Bankr.D.Mass.1987). It held that under Vermont law, CAC's mortgage was invalid and that "[s]ince the mortgage was invalid, the trustee's notice obligations are irrelevant to deciding the issue." 80 Bankr. at 265–66. Therefore, the trustee had priority over CAC's mortgage, and CAC was left with only an unsecured claim against the debtor's estate. CAC now appeals to this court.

## II.

We affirm the district court, although upon a different rationale. In summary, our analysis is as follows. We consider the case as turning on a classic question of state property law: what happens when *A* (debtor Ryan) sells land to *B* (appellant CAC), *B* fails to record, and then *A* sells the same property to *C* (trustee Stern). Under Vermont law, whether *B* or *C* has priority depends on whether *C,* the subsequent purchaser, has notice of *B*'s prior

purchase. We thus disagree with the district court that "notice obligations are irrelevant." We conclude, however, that under Vermont law, the trustee must be deemed to have lacked notice of CAC's prior mortgage. Therefore, the subsequent purchaser (trustee Stern) has priority over the prior purchaser (CAC).

We first explain why this case is equivalent to the situation where *A* sells to *B* (who fails to record) and then to *C.* Under Vermont recording statutes, a mortgage on real property is treated the same as the sale of real property. *See* Vt.Stat. Ann.tit. 27, §§ 341, 342.[2] Thus appellant CAC stands in the same shoes as someone who had purchased the condominium from debtor Ryan.[3] Although "recorded" in the sense it was physically placed in the records of the town clerk, the original mortgage deed was not an "effectual" or valid recording under Vermont law because it was signed by only one witness. Vt.Stat. Ann.tit. 27, § 341; *Day v. Adams,* 42 Vt. 510 (1869). It was as if never recorded. Under federal law, a bankruptcy trustee has the status of a bona fide purchaser of real property who purchased the property in a hypothetical transaction at the commencement of the bankruptcy case. 11 U.S.C. § 544(a)(3) (Supp. IV 1986).[4] Thus trustee Stern also stands in the same shoes as someone who purchased the condominium from Ryan. Since CAC obtained its mortgage in 1975, and the trustee obtained his interest in 1982, CAC has the status of *B,* the earlier purchaser who failed to

**2.** Section 341 is quoted in note 1, *supra.* Section 342 provides:

A deed of bargain and sale, a mortgage or other conveyance of land in fee simple or for term of life, or a lease for more than one year from the making thereof shall not be effectual to hold such lands against any person but the grantor and his heirs, unless the deed or other conveyance is acknowledged and recorded as provided in this chapter.

**3.** This is a slight oversimplification. The original mortgagee was Quechee Lakes Corporation. Shortly after Quechee Lakes Corporation obtained the mortgage, it assigned the mortgage to appellant CAC. Aside from the discussion of inquiry notice in section D, *infra,* the assignment of the mortgage from Quechee Lakes Corporation to CAC does not affect our analysis.

**4.** 11 U.S.C. §§ 544(a) and 544(a)(3) provide:

§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . . . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

record, and the trustee has the status of *C*, the subsequent purchaser.

### A. *Why Notice Matters*

Under Vermont property law, as in most states, a real property transaction memorialized in an unrecorded deed will not hold the land from any person, *except* from persons who have notice of the transaction.[5] *See, e.g., Gilchrist v. Van Dyke*, 63 Vt. 75, 21 A. 1099 (1890); *Corliss v. Corliss*, 8 Vt. 373 (1836). The addition of the notice requirement to the land recording system was an invention of the courts of equity. The theory was that a subsequent purchaser, with notice of a prior, unrecorded deed, commits a "fraud upon the first purchaser" if he attempts to avail himself of the protection of the recording statutes. 4 *American Law of Property* § 17.5, at 539. Accordingly, a court of equity will give the prior purchaser priority over a subsequent purchaser who had notice of the first purchase.

■ The district court viewed the issue of notice as "irrelevant" here, since it believed that a mortgage lacking one witness was simply "invalid" under the law of Vermont. However, the Vermont Supreme Court has repeatedly stated that a mortgage deed witnessed by less than two persons creates a "good equitable mortgage," *Morrill v. Morrill*, 53 Vt. 74, 78 (1880), which is enforceable in equity against the grantor *and* those having notice. We cannot, therefore, find the mortgage itself invalid, but must face CAC's arguments that—as held by the bankruptcy court—the trustee had both constructive notice and inquiry notice of CAC's mortgage, and was thus disentitled to priority over CAC.

### B. *Types of Notice*

"Notice" is sometimes broken down into various types: constructive, actual, record, implied, imputed, inquiry, etc. The classifications of notice employed in Vermont case law and in many of the treatises are often confusing and seemingly contradictory.

*See* 5 H. Tiffany, *Law of Real Property* § 1284 (B. Jones ed. 1939) (hereinafter *Tiffany's Real Property*) (noting that "the cases and textbooks are absolutely lacking in harmony"). A helpful formulation, however, appears in *Tiffany's Real Property*. Separating notice into two main types, actual and constructive, the treatise continues,

> It would seem that one might properly be said to have *actual notice* when he has information in regard to a fact, or information as to circumstances an investigation of which would lead him to information of such fact, while he might be said to have *constructive notice* when he is charged with notice by a statute or rule of law, irrespective of any information which he might have, *actual notice* thus involving a mental operation on the person sought to be charged, and *constructive notice* being independent of any mental operation on his part.

5 *Tiffany's Real Property* § 1284, at 50 (emphasis added). Thus "constructive notice" is not really "notice," as that word is commonly used, at all. Instead, constructive notice is a positive rule of state law that permits the prior purchaser to gain priority over a latter purchaser, *regardless* of whether the latter purchaser really knows of the prior purchase.

Constructive notice is an essential element of the land recording system: if a deed is properly recorded, all future purchasers have constructive knowledge of the deed. *See* 4 *American Law of Property* § 17.17. A purchaser, therefore, can protect his interest by the act of recording his deed of purchase. To clarify, we present three examples of actual and constructive notice: 1) a subsequent purchaser has actual notice when he knows of the existence of a prior, unrecorded deed, *Gilchrist v. Van Dyke*, 63 Vt. 76, 21 A. 1099 (1890); he has constructive notice (whether or not he has actual knowledge) of a prior deed if that deed is properly recorded, *Tomasi v. Kelley*, 100 Vt. 318, 322, 137 A. 196 (1927); and

---

5. Forty-five of the 50 states do not permit a subsequent purchaser with notice to have priority over prior purchasers who failed to record.

4 *American Law of Property* § 17.5, at 545 n. 63 (A. Casner ed. 1952).

he has both actual and constructive notice if he knows of the existence of a properly recorded deed.

■ A term sometimes used as a third and distinct type of notice is "inquiry notice." But we do not believe "inquiry notice" is a type of notice separate from "actual" or "constructive" notice. Rather, it is a corollary of both types. *See* 5 *Tiffany's Real Property* § 1285 (inquiry notice as a form of actual notice); 4 *American Law of Property* § 17.11, at 565 (inquiry notice as a form of constructive notice). Inquiry notice follows from the duty of a purchaser, when he has actual or constructive knowledge of facts which would lead a prudent person to suspect that another person might have an interest in the property, to conduct a further investigation into the facts.[6] The most common type of "inquiry notice" is present when some person other than the grantor is in actual possession of the property. In that situation, the purchaser is charged with constructive knowledge of this possession; as a result, the purchaser is "on inquiry" to determine whether the possessor has some interest in the property. *See* 4 *American Law of Property* § 17.12; 5 *Tiffany's Real Property* § 1287. *See also McCannon v. Marston,* 679 F.2d 13 (3d Cir.1982) (holding a bankruptcy trustee to constructive/inquiry notice); *In re Probasco,* 839 F.2d 1352 (9th Cir.1988) (similar).

We now turn to CAC's arguments, and the bankruptcy court's reasoning, that the trustee had both constructive and inquiry notice.

## C. Constructive Notice

■ In *Day v. Adams,* 42 Vt. 510 (1869), the Vermont Supreme Court ruled that a mortgage deed which lacked the signatures of two witnesses was "defective" under the Vermont recording statute, Vt.Stat.Ann.tit. 27, § 341 (quoted in note 1, *supra*) (modern codification of the two witness rule used in *Day v. Adams*). Even though physically registered with the town clerk, the deed could not serve as constructive notice to future purchasers. 42 Vt. at 515. This clear holding of the Vermont Supreme Court is, in our view, entirely dispositive of whether the trustee had constructive notice: under *Day,* as the mortgage here lacked the signature of one witness, it could not serve as constructive notice to a future purchaser. Nevertheless, we address both CAC's and the bankruptcy court's arguments to the contrary.

First, CAC argues that two subsequent Vermont Supreme Court cases signal a departure from the rule of *Day v. Adams.* To the contrary, both cases are entirely consistent with *Day v. Adams.* In *Morrill v. Morrill,* 53 Vt. 74, the Vermont Supreme Court was presented with two claimants to a piece of property: the beneficiary (Mabel Morrill) of a mortgage deed signed by only one witness, and a bank which subsequently attached the property to get security for an old debt. The bank had, at some time, searched the town land records and found the flawed deed. For two alternative reasons, the court held that Mabel Morrill had priority. First, the court thought it likely that the bank had searched the land records before its attachment; the bank therefore had *actual* knowledge of the defective mortgage deed. Second, even if the bank only learned of the mortgage deed after the attachment, Morrill would have priority because the bank was merely an attaching creditor, and not a *bona fide* purchaser for consideration.[7] Neither of

**6.** The Vermont Supreme Court explained inquiry notice in *Hart v. Farmers & Mechanics Bank,* 33 Vt. 252 (1860),

[T]he courts of equity are vigilant ... to see that ... purchaser[s] shall not be allowed to take any benefit resulting from any want of care and watchfulness. If there exist any circumstance of suspicion, whereby he might be said to be fairly put upon his guard, and he neglects to follow out the inquiry, he is affected with notice of all facts, which such inquiry would have brought to his knowledge, and if he purchases with his eyes shut, he acquires only the title of his grantor impeded with its attendant equity.

*Id.* at 264–65.

**7.** Even though a bankruptcy trustee is analogous to the bank in *Morrill v. Morrill* (*i.e.,* an attaching creditor acquiring security for an existing debt), this second ground of decision does not undermine the bankruptcy trustee's priority. As noted above, 11 U.S.C. § 544(a)(3) gives a federal bankruptcy trustee the status of a bona

these rationales touch upon the *Day v. Adams* holding that a deed with only one witness does not serve as constructive notice. The *Morrill v. Morrill* court, in fact, recited the *Day v. Adams* holding. *See* 53 Vt. at 78 (stating that the faulty deed's "record was not constructive notice to subsequent purchasers or attaching creditors. *Day v. Adams*, 42 Vt. 510.").

The second case cited by CAC is *Tindale v. Bove*, 97 Vt. 465, 124 A. 985 (1924). In *Tindale v. Bove* as in *Morrill v. Morrill*, the holder of a prior, but improperly witnessed mortgage (appellant Gray) gained priority over a subsequently attaching creditor (appellee Tindale). The case mainly involved a parcel of land owned by the Bove family, located in the town of Rupert. After Gray obtained his mortgage interest in the property, the land was deeded from Peter Bove to a third party and then back to Antoinette Bove. Both deeds mentioned a "mortgage to said Grays," and the deeds were properly recorded in the land records of the town of Rupert. It was these deeds, and *not* the flawed mortgage deed, which led to Tindale's notice of Gray's mortgage interest. Because the two deeds were properly recorded, Tindale had constructive notice of the deeds. And because the deeds mentioned the Gray's mortgage, Tindale was "put ... upon inquiry concerning" the Gray's mortgage interest. 97 Vt. at 468. Accordingly, Tindale had notice of the Gray's prior, but improperly recorded mortgage, and Gray was entitled to priority over Tindale.[8]

*Tindale v. Bove* in no way undermines the *Day v. Adams* rule that an improperly witnessed mortgage deed does not provide constructive notice. In fact, if Gray's mortgage deed had provided constructive notice, the Vermont Supreme Court would not have had to employ the rationale that Tindale had constructive notice because of the two subsequent, properly recorded deeds.

■ Finally, we address the bankruptcy court's rationale for ruling that the improperly witnessed mortgage deed served as constructive notice. The bankruptcy court did not attempt to distinguish *Day v. Adams* but rather held that it was no longer good law, having been decided in 1869 and being a precedent that the current Vermont Supreme Court—in the bankruptcy court's view—would no longer follow. The bankruptcy court reasoned that modern courts "are more willing to disregard a minor error in form if ignoring the error will not prejudice other parties' rights." 70 B.R. at 513. The bankruptcy court replaced the rule of *Day v. Adams* with one of its own creation: · a defective deed provides constructive notice so long as it is not "seriously misleading," and "the essential requirement of execution is that the instrument is signed, or perhaps both signed and acknowledged." The court explained, "It seems highly unlikely that the [Vermont Supreme Court] would require a three-fold guaranty of authenticity in execution consisting of acknowledgment before a notary public and two additional witnesses. This approach would be formalism to an extreme." *Id.*

While the bankruptcy court's well-stated argument is tempting, we cannot agree that *Day v. Adams* is so clearly in conflict with all or most current thinking as to

---

fide purchaser. In fact, one commentator states that the whole purpose of the bona fide purchaser provision, 11 U.S.C. § 544(a)(3), is to elevate the bankruptcy trustee from the status of a judicial lien creditor to that of a bona fide purchaser. *See* B. Weintraub & A. Resnick, *Bankruptcy Law Manual* ¶ 7.02 (1986).

8. A portion of the land at issue in *Tindale v. Bove* was located in the town of Sandgate. Since the two subsequent deeds were only recorded in Rupert, and not Sandgate, the Vermont Supreme Court was not sure whether the Rupert deeds gave Tindale constructive notice of the Gray's interest in the Sandgate portion of the land. For this portion of the land, the court explained that Tindale had "imputed notice." Tindale employed an officer to make the attachment in Rupert, and on this officer's return, he noted that the Gray's interest encompassed the entire parcel of land, including the portion located in Sandgate. The officer's actual notice of the Gray's interest in the Sandgate land was imputed to Tindale. *See generally* 5 *Tiffany's Real Property* § 1286 (notice to agent of purchaser). Thus, Tindale was "put ... upon inquiry" with respect to the land in Sandgate as well as the land in Rupert.

warrant the assumption it would no longer be followed by the Vermont Supreme Court. We have no difficulty with the proposition that, in an appropriate case, a federal court "must not consider itself bound by old state court decisions if it 'is convinced by other persuasive data that the highest court of the state would [now] decide otherwise.'" *Boniuk v. New York Medical College,* 535 F.Supp. 1353, 1357–58 (S.D.N.Y.) (quoting *West v. AT & T Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)), *aff'd without opinion,* 741 F.2d 111 (2d Cir.1982).[9] However, the "data" needed to convince a federal court to ignore old state decisions must be more "persuasive" than exists here. Neither appellant CAC nor the bankruptcy court has pointed to factors of such potency as to persuade us the Vermont Supreme Court would necessarily abandon *Day v. Adams,* no less adopt the new rule of constructive notice put forward by the bankruptcy court.

In *Bernhardt v. Polygraphic Company of America, Inc.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), the United States Supreme Court was presented with the issue of whether a federal court, sitting in diversity, should follow a 1910 decision of the Vermont Supreme Court. The Court ruled that, notwithstanding its age, the Vermont Supreme Court decision clearly established the law of Vermont:

But, as we have indicated, there appears to be no confusion in the Vermont decisions, no developing line of authorities that casts a shadow over the established ones, no dicta, doubts or ambiguities in the opinions of Vermont judges on the question, no legislative development that promises to undermine the judicial rule. 350 U.S. at 205, 76 S.Ct. at 277.[10] The same, we think, is basically true in respect to *Day v. Adams.*[11]

We are not convinced by the argument that modern courts invariably look to "substance over form" in the area of land recording law. Land recording laws must, by their very nature, employ technical rules because the "substance"—presumably the fairness of giving one bona fide purchaser priority over another—yields no simple answers. *See generally 4 American Law of Property* § 17.5 (discussing the pros and cons of the various state rules for determining priority between two purchasers). The rule advocated by the bankruptcy court does not necessarily, as the court asserted, avoid "prejudic[ing] other parties' rights." 70 B.R. at 513. Whenever constructive notice is applied, it acts to give priority to a previous purchaser over a subsequent bona fide purchaser, that is, a purchaser who gained no *actual* notice of the prior purchase through examination of the town land records. Neither purchaser is entirely innocent nor entirely blameworthy. The prior purchaser has attempt-

---

9. *West v. AT & T Co.,* 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, dealt only with a state appellate decision, not a state supreme court decision. However, in *Bernhardt v. Polygraphic Company of America, Inc.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), the United States Supreme Court indicated that on certain occasions a federal court need not follow an old state supreme court decision. *See id.* at 204–05, 76 S.Ct. at 276–77. *See also Moore's Federal Practice* ¶ .309[1] (1987).

   *West* and *Bernhardt* involved federal courts sitting in diversity jurisdiction, and applying state law under the *Erie* doctrine, while in the present case state law is employed because of the statutory mandate of the Bankruptcy Code. Nonetheless, the question in both situations— "what is the relevant state law?"—is the same.

10. Justice Frankfurter, concurring, wrote that the 1910 Vermont Supreme Court decision did not clearly establish Vermont law, and that the

question should be remanded to the court of appeals. *Id.* at 205, 76 S.Ct. at 277.

11. A 1977 revision of the Vermont land recording statutes arguably *decreases* the need for a judicial modification of *Day v. Adams.* In 1977, Vermont enacted section 348, which provides that defectively recorded deeds (including those lacking the signatures of two witnesses) shall be deemed valid 15 years after the date of recording. Vt.Stat.Ann.tit. 27, § 348 (Supp.1987). If the bankruptcy court's rule were adopted, the need for the new provision would be obviated: a defectively executed deed would always give constructive notice, and the defective deed would be effectively valid from the day of its recording. Moreover, by providing that a defectively recorded deed is valid only after 15 years, the Vermont legislature can be said to have implied that a defectively recorded deed less than 15 years old is not valid.

ed to record, but has done so negligently. The latter purchaser has acted imprudently by not examining the town land records. Choosing one purchaser over the other is a question of state policy, not of "form vs. substance," or of "old law vs. new law." The bankruptcy court's solution—providing that an unwitnessed mortgage gives constructive notice—could undoubtedly appeal to some courts, but others may believe that it effectively removes the witness requirement from the statute. If an unwitnessed deed could provide constructive notice, purchasers might feel free to ignore the witness requirement. This concern lay behind the decision of the Vermont Supreme Court in *Day v. Adams:*

> But if one of the two witnesses may be dispensed with, both may, and on the same principle all the statutory requirements may be disregarded.

42 Vt. at 515. In recognition of this problem, the bankruptcy court suggested that a deed might still have to be signed, or perhaps signed and acknowledged, in order to provide constructive notice. But this rule is no less "formal"; it is arguably merely different from the rule adopted in *Day v. Adams.*

Nor do we find an overwhelming movement of state jurisdictions away from "formal" rules such as that in *Day v. Adams.* To be sure, the bankruptcy court cites to a recent Idaho Supreme Court opinion which lends some support to its position. *See In re New Concept Realty & Development, Inc.*, 107 Idaho 711, 692 P.2d 355 (1984) (on certification from the Ninth Circuit, *see* 753 F.2d 804 (9th Cir.1985)) (holding that an improperly acknowledged deed could be cured by an affidavit from the notary public). *See also In re Cirasuolo*, 48 B.R. 447 (Bankr.N.D.N.Y.1985) (construing New York law as providing that an improperly

recorded mortgage gives constructive notice).[12] However, the bankruptcy court acknowledged in an admirable and fair review of the authorities that *Day v. Adams* still represents "a majority view," 70 B.R. at 512, and cites a relatively recent state supreme court decision which adheres to this view. *See Torgeson v. Connelly*, 348 P.2d 63, 67 (Wyo.1959) (deed without acknowledgment provides no constructive notice). *See also* Annotation, *Record of Instrument without Sufficient Acknowledgment as Notice*, 59 A.L.R.2d 1299 (1958) (citing cases from 34 states, and concluding that as a general rule instruments with defective acknowledgments do not provide constructive notice.)[13]

In conclusion, appellant CAC has fallen short of providing "persuasive data" that the Vermont Supreme Court would no longer follow the *Day v. Adams* rule that an improperly witnessed mortgage deed provides no constructive notice.

### D. *Inquiry Notice*

■ The bankruptcy court held, in the alternative, that the trustee was on inquiry notice since, in its view, a hypothetical bona fide purchaser would have a legal duty in this situation to have searched the town land records. It reasoned that Vermont law was silent on the subject, and that general principles of modern commercial law, as developed in the Uniform Commercial Code, require a bona fide purchaser to make a good faith inquiry into any facts which could reveal another's interest. This duty of good faith inquiry, it reasoned, must certainly extend to the town land records, which are the most obvious source of information regarding the interests of previous purchasers. 70 B.R. at 516–18.

---

12. The bankruptcy court also cites *Leighton v. Leonard*, 22 Wash.App. 136, 589 P.2d 279 (1978). This case, however, turned on a State of Washington curative statute, and not on a judge-made rule.

13. Although *In re Hofacker*, 34 B.R. 604 (Bankr. S.D.Ohio 1983), appears to directly support the trustee's position, we do not give it much weight. In *Hofacker,* the court held that a bankruptcy trustee had priority over the holder of a defective Ohio mortgage. Ohio, however, seems to be one of the few jurisdictions where notice does not matter in the priority of mortgages. *See Wright v. Franklin Bank,* 59 Ohio St. 80, 51 N.E. 876 (1898); 4 *American Law of Property* § 17.5, at 538 n. 27. Thus Ohio law is of limited relevance to Vermont, where only subsequent purchasers *without notice* are entitled to priority.

This reasoning of the bankruptcy court, if adopted by a state court or legislature, might result in an improved land recording system. We do not believe, however, that the bankruptcy court was free to write on a clean slate. To accept the suggested expansion of inquiry notice would be to disregard the clear *Day v. Adams* rule that defectively recorded mortgages do *not* provide constructive notice.

As noted above, inquiry notice is not entirely distinct from actual or constructive notice; rather, it is a duty of a purchaser to conduct a reasonable investigation *upon gaining constructive or actual notice of facts which would make a prudent person suspicious.* The doctrine is moored upon the existence of preliminary facts which serve to put the purchaser upon inquiry.

We think the bankruptcy court cut inquiry notice loose from this mooring. It bypassed the source of the preliminary facts that serve to put a purchaser upon inquiry, and instead simply created, as a matter of policy, a new legal duty to search the town land records. Questions of a purchaser's *duty,* however, are by definition in the sphere of *constructive* notice. *See Tiffany's Real Property* § 1284 (defining constructive notice as when the purchaser is "charged with notice by a statute or rule of law"). Thus the question posed by the bankruptcy court amounted to nothing more than asking whether a purchaser should not henceforth be deemed as having constructive notice of *all* records placed with the town clerk. This question is conclusively answered by *Day v. Adams:* purchasers are only charged with constructive notice of *properly recorded* deeds, and not of all deeds on file with the town clerk.

■ Appellant CAC also argues, in keeping with the bankruptcy court's views, that if a purchaser of real estate has inquiry notice of the rights of a person in actual possession of the property—rights which are difficult to discover—then *a fortiori* the purchaser must have inquiry notice of a recorded but defective mortgage— an interest which will be obvious to anyone who conducts a title search. The bankruptcy court wrote

There would be a logical inconsistency if such vague indications of another's property interest [*i.e.,* possession] created a duty to inquire, and the unmistakable claim arising from a mortgage on record lacking just one of two witnesses did not raise such a duty.

70 B.R. at 518. Again, this argument skips over the source of the inquiry notice. The claim arising from a deed lacking one of two witnesses is only "unmistakable" if one has some knowledge of that deed. And under the law of Vermont, a purchaser does not have constructive knowledge of an improperly witnessed deed. (If the purchaser has *actual* knowledge of the improperly recorded deed, then the claim may well be "unmistakable." *See Gilchrist v. Van Dyke,* 63 Vt. 76 (1890)) [14].

■ Finally, CAC argues that the properly recorded mortgage assignment from Quechee Lakes Corporation to CAC gave the trustee inquiry notice of the previous, improperly witnessed mortgage deed between debtor Ryan and Quechee Lakes Corporation. It is true that the mention of an unrecorded deed in a properly recorded deed will put the purchaser on inquiry of the unrecorded deed. *See Tindale v. Bove,* 97 Vt. 465, 124 A. 585 (discussed *supra* ). However, to be put on inquiry, the purchaser must first have notice of the valid mortgage deed. In this case, the trustee was never put on inquiry because he had no notice of the mortgage assignment.

Although *in general* properly recorded deeds provide future purchasers with constructive notice, purchasers do not have constructive notice of deeds which are outside the chain of title. *See, e.g.,* 4 *American Law of Property* § 17.17; *Tiffany's Real Property* § 1265 ("[I]f a conveyance is not recorded, the fact that a conveyance or mortgage by the grantee therein is re-

---

**14.** The fact that the trustee, after appointment, searched the town records and discovered the mortgage in question is of no legal significance. The trustee stands in the shoes of a hypothetical bona fide purchaser who purchased at the commencement of the bankruptcy case, without regard to any knowledge of the trustee. 11 U.S.C. § 544(a)(3) (quoted in note 4, *supra* ).

corded will not affect with notice a person who subsequently obtains a conveyance through the same grantor."). In *Tindale v. Bove*, Gray's mortgage was mentioned in two subsequent deeds which were in the chain of title from Bove to Tindale. In the present case, the original mortgage deed (from debtor Ryan to Quechee Lakes Corporation) was not a valid recording, and any documents stemming from this invalid record are not within the chain of title from the debtor to the trustee. Therefore, even though the mortgage assignment from Quechee Lakes Corporation to CAC was properly recorded, the trustee is not charged with constructive notice of that assignment. And if the trustee had no notice of the assignment, then the assignment could not put him on inquiry of the prior, improperly witnessed deed. *See also In re Ryan*, 70 B.R. at 512 (bankruptcy court's rejection of this same argument, for the same reason).[15]

In sum, under the law of Vermont, a purchaser in the shoes of trustee Stern would acquire his interest without either constructive or inquiry notice of CAC's interest, and would thus be entitled to priority.

### E. *Remaining Arguments*

 CAC argues that it can prevail even if it loses on the question of notice under Vermont law. According to CAC, even if a subsequent purchaser under Vermont law would receive priority under the present circumstances, the bankruptcy code should somehow be construed to give the trustee less priority than a "real" purchaser. This construction, CAC argues, is more in line with the purpose behind Congress's 1978 decision to grant the bankruptcy trustee the status of a bona fide purchaser. *See* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 544(a)(3), 92 Stat. 2549, 2596 (codified as amended at 11 U.S.C. § 544(a)(3)). We find this argument without merit. First, the bona fide purchaser provision is a part of 11 U.S.C. § 544(a), which is known as the "strong arm" clause of the Bankruptcy Code. The general purpose of the strong arm clause is "to benefit general creditors by maximizing the size of the bankruptcy estate." B. Weintraub & A. Resnick, *Bankruptcy Law Manual* at 7–2 (1986). Whether or not Congress specifically envisioned the result reached in this case, the result cannot be said to clash with the general policy of increasing the size of the estate.[16] Second, and more important, there is no ambiguity in the Bankruptcy Code's prescription that "[t]he trustee shall have ... the rights and powers of ... a bona fide purchaser of real property ... from the debtor." 11 U.S.C. § 544(a).

We have considered the remaining arguments in CAC's brief, and find them to be without merit.

*Affirmed.*

---

**15.** CAC also cites *In re Morse*, 30 B.R. 52 (Bankr. 1st Cir.1983), to support its argument that the properly recorded assignment from Quechee Lakes Corporation to CAC gives the trustee inquiry notice of the previous, improperly witnessed mortgage deed. *In re Morse*, however, interpreted the law of Maine. Even assuming that the law of Maine is similar to the law of Vermont, *In re Morse* is distinguishable for the same reason as *Tindale v. Bove*. In *In re Morse*, three inconsistent, but properly recorded documents within the chain of title served to put the bankruptcy trustee on inquiry notice of a bank's mortgage interest. In the present case, there are no validly recorded documents within the chain of title which mention CAC's mortgage.

**16.** The legislative history of the 1978 amendments did not explain why the trustee was given the status of a bona fide purchaser, and several different reasons have been advanced. *See, e.g., In re Ryan*, 70 B.R. at 514 & n. 9; *McCannon v. Marston*, 679 F.2d 13, 16–17 (3d Cir.1982); B. Weintraub & A. Resnick, *Bankruptcy Law Manual* ¶ 7.02 (1986); R. Kratovil & R. Werner, *Modern Mortgage Law & Practice* § 39.06(a)(1) (2d ed. 1981).