**In re DAYLIGHT DAIRY PRODUCTS, INC., Debtor.**

**Joseph B. COLLINS, Trustee in Bankruptcy of Daylight Dairy Products, Inc. d/b/a Jane Alden Stores, Plaintiff,**

**v.**

**BANK OF NEW ENGLAND–WEST, N.A. Agri–Mark, Inc., Intervenors, Defendants.**

**Bankruptcy No. 89–40217–JFQ. Adv. No. 90–4227.**

United States Bankruptcy Court, D. Massachusetts.

March 8, 1991.

Joseph Collins, Hendel, Collins & Newton, Springfield, Mass., for trustee/plaintiff.

Steven Weiss, Cooley, Shrair, Alpert, Labovitz & Dambrov, Springfield, Mass., for Bank of New England–West, defendant.

Victor Rosenberg, Robinson, Donovan, Madden & Barry, Springfield, Mass., for Agri–Mark, Inc.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Bank of New England–West, N.A. (the "Bank") mistakenly recorded a discharge of its mortgage from Daylight Dairy Products, Inc. (the "Debtor") covering property at 700–702 Summer Avenue, Springfield, Massachusetts. The trustee in bankruptcy, Joseph B. Collins (the "Trustee"), seeks to take the property free of the mortgage on the strength of his status as a judicial lien creditor and bona fide purchaser of real property under 11 U.S.C. § 544(a)(1) and (3) (1988). The Trustee also seeks the return of certain payments on the mortgage debt made by the Debtor to the Bank shortly before and after the Debtor filed its chapter 11 petition with the court. Agri–Mark, Inc. ("Agri–Mark"), which holds a mortgage covering the same and other property, claims priority over both the Bank and the Trustee. I have allowed Agri–Mark to intervene, and I have approved a settlement agreement between the Trustee and Agri–Mark whereby they join forces against the Bank to share the benefit from any avoidance of the Bank's mortgage. The issues of avoidance of the mortgage and recovery of post-petition payments are now before the court on the Bank's motion to dismiss Agri–Mark's complaint and motions for summary judgment filed by the Trustee and Agri–Mark.

## I. FACTS

The facts are not in dispute. On November 12, 1975, the Debtor granted a mortgage to the Bank on real property located at 694–696 and 700–702 Summer Avenue, Springfield, Massachusetts which was duly recorded. On February 25, 1987, the loan documents were amended to increase the mortgage amount. At the same time, the Bank agreed to release several properties other than the Summer Avenue property. On March 31, 1987, through clerical inadvertence and error, the Bank executed and acknowledged a discharge of the mortgage on the Summer Avenue property. For some unexplained reason, the discharge was not recorded until November 3, 1987.

On July 29, 1987, Agri–Mark recorded its mortgage from the Debtor covering a number of properties including 700–702 Summer Avenue. Agri–Mark's mortgage provides that the "premises are subject to" the Bank's mortgage.

On March 10, 1989, the Debtor filed a Chapter 11 petition. Its schedules filed with the court list the Bank as a creditor holding a first mortgage on the 700–702 Summer Avenue property. On March 14, 1989, in a futile attempt to revive the discharged mortgage, the Bank recorded with the real estate records a scrivener's affidavit asserting the error.

## II. THE TRUSTEE'S STATUS UNDER SECTION 544(a)

Absent the intervening rights of third parties, the Bank would unquestionably be entitled to obtain reinstatement of its mortgage under general equitable principles granting relief against mistake.

*General Builders Supply Co. v. Arlington Co-op. Bank,* 359 Mass. 691, 692, 271 N.E.2d 342, 345 (1976); *North Eastern Co-op. Bank v. MacLean,* 300 Mass. 285, 292, 15 N.E.2d 241, 245 (1938). By reason of the so-called "strong-arm" clause of 11 U.S.C. § 544(a), however, the Trustee has the rights and powers of a judicial lien creditor or judgment creditor with execution returned unsatisfied. Section 544(a) also empowers the Trustee to avoid a transfer of an interest in real property of the Debtor to the extent a bona fide purchaser of the property may avoid the transfer. The Trustee has these powers "without regard to the knowledge of the [T]rustee or of any creditor." *Id.* The Trustee nevertheless takes the property subject to any constructive knowledge imposed upon creditors and purchasers under applicable state law. *McCannon v. Marston,* 679 F.2d 13 (3d Cir.1982) (trustee subject to constructive notice of unrecorded deed recognized in Pennsylvania law from purchaser's possession). *Cf. Stern v. Continental Assurance Co. (In re Ryan),* 851 F.2d 502 (1st Cir.1988) (trustee takes free of constructive notice of improperly witnessed and recorded mortgage where Vermont law denies constructive notice effort to such a mortgage). The Trustee is also subject to whatever inquiry notice may be imposed by state law under the particular facts. *Maine Nat'l Bank v. Morse (In re Morse),* 30 B.R. 52 (1st Cir.BAP 1983) (trustee subject to mistakenly discharged mortgage where Maine law would impose a duty to inquire concerning certificate of foreclosure recorded after recording of discharge). The Bank apparently concedes, as it must, that the recording of the discharge prevents the Trustee from being charged with constructive notice of the mortgage.

III. REFERENCE IN AGRI–MARK MORTGAGE TO BANK'S MORTGAGE AS "ACTUAL NOTICE" OF BANK'S MORTGAGE UNDER MASSACHUSETTS STATUTE

The discharge of the Bank's mortgage was dated before but recorded after the date and recording of Agri–Mark's mortgage. Yet the Agri–Mark mortgage states that it is subject to the Bank's mortgage. Why, asks the Bank, would the Agri–Mark mortgage be made subject to the Bank's mortgage if a discharge of the Bank's mortgage had already been executed? The Bank contends that the records raise this question and that Massachusetts law requires any purchaser or lien creditor, and the Trustee standing in his shoes, to make diligent inquiry to find the answer. That inquiry, says the Bank, should have been made of the Bank, and if made it would have led to discovery of the mistake.

Inquiry notice of another's property interest is a corollary of both "actual" and "constructive" notice. *In re Ryan, supra,* at 507. Where recognized, it involves a duty of investigation imposed upon one who has actual or constructive knowledge of facts which would lead a prudent person to suspect that another has an interest in the property. *Id.*

■ There are two flaws in the Bank's argument. First, Massachusetts law does not recognize inquiry notice of unrecorded deeds or mortgages. In Massachusetts, an unrecorded deed or mortgage is valid only against the grantor, his heirs and devisees and "persons having actual notice of it." Mass.Gen.L. ch. 183, § 4. The phrase "actual notice" is interpreted by the Massachusetts courts to exclude inquiry notice even when there is a reference to a party's property interest in the records which should be examined in a title search. In *Tramontozzi v. D'Amicis,* 344 Mass. 514, 183 N.E.2d 295 (1962), the probate inventory in the estate of a prior owner contained a notation referring to a mortgage which was never recorded. The court held that this did not provide the required "actual notice." To the same effect is *McCarthy v. Lane,* 301 Mass. 125, 16 N.E.2d 683, 685 (1938), where the court denied any effect to a reference in the chain of title to the predecessor of a party. It equated "actual notice" to knowledge, stating:

Moreover, for aught we know there may have been parol evidence clearly indicating that the petitioner did not have actual notice of any prior unrecorded deed af-

fecting the land which he sought to register.

301 Mass. 125, 129, 16 N.E.2d 683.

■ There is no contention that the Trustee had actual notice of the continued vitality of the Bank's mortgage. Even if the Trustee had such notice, it would not be imputed to the bankruptcy estate; § 544(a) grants the Trustee rights and powers "without regard to any knowledge of the Trustee or of any creditor."

■ Second, the reference in Agri-Mark's mortgage to the Bank's mortgage, coupled with the earlier execution date of the discharge of the Bank's mortgage, would not provide inquiry notice even if Massachusetts recognized the doctrine of inquiry notice. There is a logical explanation for the earlier date of the discharge other than mistaken execution. The discharge could have been signed in March in the expectation of a pay-off which had been promised by the Debtor but delayed until the following November. Delays in real estate transactions are common, and papers are frequently executed prior to a transaction, with or without an escrow. The dating of a discharge prior to the transaction may well be more common than a mistake in its execution. It is only based upon hindsight that one would suspect something might be amiss from these records.

Although Massachusetts law does not recognize the doctrine of inquiry notice under § 4, the cases give us some idea of how the Supreme Judicial Court would apply the doctrine. *Richardson v. Lee Realty Corp.*, 364 Mass. 632, 307 N.E.2d 570 (1974), involved a question of inquiry notice, not of an unrecorded deed or mortgage under § 4, but of facts contained in papers on file in a law suit leading to a sheriff's sale. It was contended that the suit papers indicated such lack of opposition on the part of an executor as to amount to a breach of the executor's fiduciary obligations and hence a defect in the title. The court observed that it "need not decide whether the strict standard of actual notice applicable as to unrecorded instruments pursuant to Mass.Gen.L. ch. 183, § 4 is applicable to matters disclosed of record but not within the scope of that section." *Id.*, 364 Mass. at 635, 307 N.E.2d at 573. It concluded that under the doctrine of inquiry notice the suit papers gave no notice of the executor's default because there may have been no defense to the action. There is therefore no inquiry notice of a defect in title from matters of record which are logically consistent with facts supporting an absence of any defect. That is the case here.

The Bank relies upon *Maine Nat'l Bank v. Morse (In re Morse)*, 30 B.R. 52 (1st Cir.BAP 1983), which also involved the mistaken execution and recording of a mortgage discharge. The bank there commenced foreclosure within a few weeks after recording the discharge, and it recorded a certificate of foreclosure with the real estate records. The Maine statute, like that of Massachusetts, made unrecorded mortgages only effective against third parties having "actual notice" thereof. Me.Rev.Stat. tit. 33 § 201. The bankruptcy appellate panel nevertheless ruled that the recorded certificate of foreclosure gave inquiry notice concerning the mistaken discharge. The panel did so, however, in reliance upon decisions of the Supreme Judicial Court of Maine which apparently construe the phrase "actual notice" quite differently from the Massachusetts court. *See, e.g., Hopkins v. McCarthy*, 121 Me. 27, 29, 115 A. 513, 515 (1921) ("actual notice is that which one who is put on a trail is duty bound to seek to know, even though the track or scent leads to knowledge of unpleasant and unwelcome facts"). The panel in *Morse* concluded that under the law of Maine there is actual notice of an unrecorded instrument if the record discloses facts sufficient to incite an inquiry which should lead to the notice. Whether that is a blurring of constructive and actual notice, and whether the Maine decisions support this proposition, is not before me. I am concerned with the law of Massachusetts; its decisions construe the recording statute to exclude inquiry notice.

A separate judgment has issued today declaring the Bank's mortgage void against

the Trustee, preserving the mortgage for the benefit of the estate under § 551, and permitting recovery by the Trustee against the Bank in the amount of the Debtor's post-petition payments on the mortgage.